IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
1:22-cv-955

| | |
|---|---|
| ALLIANCE COMMISSION ENHANCEMENT, LLC<br><br>Plaintiffs,<br><br>v.<br><br>JASON W. CAREY and TAWNY D. CAREY<br><br>Defendants. | **COMPLAINT** |

COMES NOW Plaintiff Alliance Commission Enhancement, LLC, complaining of Defendants Jason W. Carey and Tawny D. Carey, and alleges and says:

1. Plaintiff Alliance Commission Enhancement, LLC, ("Plaintiff" or "ACE") is a North Carolina limited liability company with its principal place of business in Alamance County, North Carolina.

2. Upon information and belief, Defendants Jason W. Carey and Tawny D. Carey (together, "Defendants" or "the Careys") are citizens and residents of the State of Nevada.

3. Defendants were, until October 2022, independent contractor sales agents ("Agents") associated with Superior Performers, LLC, d/b/a National Agents Alliance ("NAA") and its predecessor, Superior Performers, Inc.

4. On or about October 5, 2022, Defendants were terminated as Agents with NAA due to their various acts of misconduct.

5. On or about October 7, 2022, NAA sued Defendants in the United States District Court for the Middle District of North Carolina in the action styled *Superior Performers, LLC, d/b/a National Agents Alliance v. Jason Carey and Tawny Carey* ("the NAA Lawsuit").

6. The amount in controversy in this matter is in excess of $75,000 (seventy-five thousand dollars) and the parties are citizens and residents of different states. Accordingly, this Court has jurisdiction over this matter pursuant to 28 USC Sec. 1332.

7. ACE was created to facilitate a program ("the Insurance Program") offered to certain NAA Agents as an additional benefit of affiliation with NAA.

8. On or about January 14, 2019, pursuant to the Insurance Program, the Careys each entered into agreements with ACE, including Split Dollar Agreements and a Collateral Assignment Agreements, which are referred to hereinafter collectively as "the Insurance Agreements". Pursuant to the Insurance Agreements: the Careys would each purchase an insurance policy covering their respective lives from a designated insurance carrier ("the Insurer"); ACE would pay the premiums due on that policy; each premium payment by ACE would be treated as a loan ("the Premium Loans") from ACE to each Defendant; each Defendant would be required to pledge the policy as collateral to secure his or her obligation to repay the Premium Loans; and the terms of the repayment of the Premium Loans would be governed by the Insurance Agreements.

9. Pursuant to the Insurance Agreements, each Defendant purchased a life insurance policy from the Insurer ("the Subject Policies") covering her or his life.

10. ACE made all required premium payments on the Subject Policies to the Insurer.

11. The premium payments made by ACE on the Insurance Policies constitute loans to Defendants ("the Defendants' Premium Loans").

12. Defendants' Premium Loans bear interest at a contractually-agreed rate, compounded annually.

13. The total principal and accrued, unpaid interest due on the Defendants' Premium Loans from each Defendant to ACE at any given time is referred to in the Insurance Agreements, and herein, as "the Liabilities."

14. At any given time, the Subject Policies have a "Cash Surrender Value" ("CSV").

15. Pursuant to the Insurance Agreements, upon a "Material Breach" of the Insurance Agreements: Defendant forfeits any interest in the Insurance Policy; Defendant shall, within thirty (30) days, execute any documents required by ACE to transfer the Insurance Policy to ACE; and Defendant shall, within sixty (60) days of the date of the required transfer of the Insurance Policy to ACE, pay ACE an amount equal to the difference between the CSV of the Insurance Policy and the Liabilities, if as of the date of the transfer the amount of the Liabilities are greater than the CSV of the Subject Policy.

16. For purposes of the Insurance Agreements, a "Material Breach" shall occur in various circumstances, including the making of any statement or performance of any act that NAA believes will either (1) threaten the existing or prospective customer relationships of NAA or any of its affiliates, or (2) have a materially adverse effect on the business, assets, or financial condition of NAA or any of its affiliates.

17. As alleged in the NAA Lawsuit, each Defendant has committed multiple acts that constitute Material Breaches of their respective Insurance Agreement.

18. Each Insurance Agreement was terminated by ACE upon the occurrence of each Defendant's Material Breaches. Plaintiff accordingly demanded that Defendants execute the documents necessary to change the ownership of their Subject Policy to ACE.

19. Each Defendant has failed and refused to execute the Insurer's change of ownership form provided to him or her by ACE.

20. Each Subject Policy's CSV is less than the amount of the Policy's Liabilities. The difference between the CSV of the Subject Policy and the Liabilities, and therefore the amount due to ACE from each Defendant as the result of her/his Material Breach of the Insurance Agreements, is due and payable by each Defendant to ACE. Such amount, as to each Defendant, is in excess of $75,000.

## FIRST CAUSE OF ACTION
(Money Owed)

21. The foregoing Paragraphs are incorporated herein by reference.

22. Defendants have breached the Insurance Agreements by failing to pay ACE the difference between the Liabilities and the Subject Policy's CSV.

23. ACE is entitled to payment of compensatory damages as well as attorneys' fees and costs that Plaintiff incurs in recovering Defendants' unpaid obligations under the Insurance Agreements.

## SECOND CAUSE OF ACTION
(Transfer of Policy to ACE)

24. The foregoing Paragraphs are incorporated herein by reference.

25. Defendants are required, upon Material Breach of the Insurance Agreements, to execute the documents necessary to transfer the Subject Policies to ACE. Defendants have failed and refused to do so.

26. ACE is entitled to an Order directing Defendants to execute the required documents. In the alternative, ACE is entitled to an Order from the Court transferring each Defendant's rights and interests in the Subject Policies to ACE to the same effect as if such Defendant had executed the documents otherwise required for such a transfer.

WHEREAS, Plaintiff Alliance Commission Enhancement, LLC, respectfully prays that the Court:

1. Order each Defendant to transfer their respective Subject Policy to Plaintiff Alliance Commission Enhancement, LLC, or in the alternative enter an Order transferring such rights and interests in the Subject Policies to ACE;

2. Award ACE damages representing the difference between the Liabilities and the CSV for each Subject Policy, including interest and costs;

3. Award NAA its attorneys' fees;

4. Tax the costs of this action against Defendants; and

5. Provide such other relief as the Court may deem just and proper.

This the 9th day of November, 2022.

/s/ Robert J. King III
Robert J. King III
NC State Bar No. 15946
rking@brookspierce.com
William P. H. Carey
NC State Bar No. 7651
bcary@brookspierce.com
Bryan Starrett
NC State Bar No. 40100
bstarrett@brookspierce.com

OF COUNSEL:

BROOKS, PIERCE, McLENDON,
  HUMPHREY & LEONARD, LLP
PO Box 26000
Greensboro, NC 27420
Telephone: 336-373-8850