```
         IN THE UNITED STATES DISTRICT COURT
       FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
```

| | | |
|---|---|---|
| ALLIANCE COMMISSION ENHANCEMENT, LLC, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | 1:22cv955 |
| JASON W. CAREY and TAWNY D. CAREY, | ) ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM ORDER

THOMAS D. SCHROEDER, District Judge.

This is a contract dispute between Plaintiff Alliance Commission Enhancement, LLC ("ACE") and Defendants Jason W. and Tawny D. Carey. Before the court is Defendants' motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). (Doc. 18.) Also pending before this court is a related action, case number 1:22-cv-850, brought by Superior Performers, LLC, d/b/a National Agents Alliance ("NAA") against these same Defendants for breach of contract and a declaratory judgment ("NAA Lawsuit").

For the reasons set forth below, the motion to dismiss will be denied.

I.  **BACKGROUND**

The facts outlined in ACE's amended complaint (the "complaint") (Doc. 14), which are taken as true for the purpose of the present motion, show the following:

ACE is a North Carolina limited liability company with its principal place of business in Alamance County, North Carolina. (Doc. 14 ¶ 1.) It was created to facilitate the provision of an insurance program for Superior Performers, LLC, d/b/a National Agents Alliance ("NAA") and its predecessor, Superior Performers, Inc. (Id. ¶ 7.) NAA recruits and trains sales agents who, as independent contractors, sell insurance for various insurance companies. (Doc. 13 ¶ 5 in NAA Lawsuit.)[1] ACE's insurance program provides coverage as a benefit to NAA-trained agents. (Doc. 14 ¶ 9.)

Defendants are citizens and residents of Nevada and are husband and wife. (Id. ¶ 2.) They were independent contractor sales agents of NAA until October 2022, when they were allegedly terminated "due to various acts of misconduct." (Id. ¶ 4.) Defendants voluntarily participated in ACE's insurance program and entered into a Split Dollar Agreement and a Collateral Assignment Agreement, which the complaint collectively refers to as the "Insurance Agreements." (Id. ¶ 8.) These agreements are filed at docket entries 24-1 through 24-4.

---

[1] Under limited exceptions, a court may consider documents beyond the complaint without converting the motion to dismiss into one for summary judgment. Goldfarb v. Mayor & City Council of Baltimore, 791 F.3d 500, 508 (4th Cir. 2015). A court may properly consider documents that are "explicitly incorporated into the complaint by reference and those attached to the complaint as exhibits." Goines v. Valley Cmty. Servs. Bd., 822 F.3d 159, 166 (4th Cir. 2016). The complaint in case number 1:22-cv-850 was expressly incorporated by reference in the complaint in this case. (Doc. 14 ¶ 19.)

According to ACE, the Insurance Agreements first require that Defendants purchase an insurance policy from an insurer. (Id. ¶ 9.) Upon purchase, ACE agrees to pay the premiums due on the policy, which are treated as a loan from ACE to each Defendant, and Defendants pledge the policy as collateral to secure their obligation to repay the premiums. (Id.) The premiums bear interest at a contractually agreed rate, compounded annually. (Id. ¶ 14.)

ACE alleges that upon a "Material Breach" of the Insurance Agreements, each Defendant (1) would forfeit any interest in the insurance policy, (2) must execute any documents required by ACE to transfer the policy to ACE within 30 days, and (3) must pay ACE the difference between the principal (plus interest) minus the policy's cash surrender value. (Id. ¶ 17.) According to the complaint, a "Material Breach" occurs "in various circumstances, including,"

> the making of any statement or performance of any act that NAA believes will either [] threaten the existing or prospective customer relationships of NAA or any of its affiliates, [or] have a materially adverse effect on the business, assets, or financial condition of NAA or any of its affiliates[, or] by performing services for a business which sells life insurance products as a significant part of its business in a manner that would threaten existing or prospective customer relationships of NAA or its affiliates.

(Id. ¶ 18.)

ACE alleges that each Defendant purchased a life insurance

3

policy from an insurer worth "millions of dollars" and that ACE made all required premium payments. (Id. ¶ 11.) "The only requirement for receiving these benefits was that [Defendants] comply with their legal (including contractual) obligations to ACE and NAA." (Id. ¶ 10.)

Through a cross-reference to the complaint in the NAA Lawsuit, ACE alleges that each Defendant "has committed multiple acts that constitute Material Breaches of their respective Insurance Agreement." (Id. ¶ 19.) ACE has terminated the Insurance Agreements with each Defendant, and each Defendant has allegedly refused to execute the change of ownership form. (Id. ¶¶ 20-21.) Moreover, the difference between the premium (and interest) and the cash surrender value exceeds $75,000 as to each Defendant and remains unpaid. (Id. ¶ 22.)

Relying on these allegations, ACE brings two causes of action, the first for "Money Owed" and the second for "Transfer of Policy to ACE." (Id. at 5.) ACE requests that the court order Defendants to transfer their policies to ACE or, alternatively, that the court order the "transfer[] [of] such rights and interests in the Subject Policies to ACE[.]" (Id. at 6.) ACE also seeks monetary damages, attorneys' fees, and costs. (Id.)

In response to this court's order (Doc. 23), ACE has filed the Split Dollar Agreements and Collateral Assignment Agreements executed by each Defendant. (Docs. 24-1 through 24-4.) The motion

4

is fully briefed and ready for resolution.

**II. ANALYSIS**

    **A. Standard of Review**

Federal Rule of Civil Procedure 8(a)(2) provides that a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. (8)(a)(2).  A Rule 12(b)(6) motion to dismiss is meant to "test[] the sufficiency of a complaint" and not to "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses."  Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992).  To survive such a motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  In considering a Rule 12(b)(6) motion, a court "must accept as true all of the factual allegations contained in the complaint," Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam), and all reasonable inferences must be drawn in the non-moving party's favor, Ibarra v. United States, 120 F.3d 472, 474 (4th Cir. 1997).  However, the court "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments."  Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008).  Rule 12(b)(6) protects against meritless litigation by requiring sufficient factual allegations "to raise a right to

5

relief above the speculative level" so as to "nudge[] the[] claims across the line from conceivable to plausible." Twombly, 550 U.S. at 570; see Iqbal, 556 U.S. at 678. Thus, mere legal conclusions should not be accepted as true, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678.

**B. Motion to Dismiss**

Defendants first argue that ACE "fails to allege sufficient facts to state a plausible claim for relief for breach of contract" because ACE "presuppose[s] that Defendants committed material breaches." (Doc. 19 at 5.) In Defendants' view, ACE has only identified acts that would constitute a material breach by cross-referencing to its complaint in the NAA Lawsuit. (Id. at 6.) Though Defendants do not contest that the court may consider this complaint without converting the motion into one for summary judgment (id. at 6 n.1), they nevertheless maintain that the allegations in the complaint in the NAA Lawsuit fail to state a plausible claim for breach of contract. (Id. at 6.) In response, ACE contends that the cross-references to the NAA Lawsuit complaint, which it maintains is adequately pled, suffices to state a claim for relief here. (Doc. 21 at 4-5.)

Second, Defendants argue that ACE's insurance agreements are unenforceable illusory contracts because a non-party to the contract, NAA, has the unilateral ability to declare a material

6

default.  (Doc. 19 at 7.)  Defendants contend that, while ACE frames their life insurance coverage as an "additional benefit," they in fact serve as a means by which ACE and NAA can "exert control over Defendants."  (Id.)  This follows, according to Defendants, because the trigger for the right of termination is based on third-party NAA's "belief" that a statement or act by Defendants will harm NAA's customer relationships, business, or financial condition.  (Id. at 8.)  Defendants maintain that this "unlimited right to determine the nature and extent" of Defendants' respective performances renders the insurance agreements illusory.  (Id. at 8-9.)

ACE responds that its right to declare a "Material Breach" is not unlimited, but instead is limited by its duty to use "good faith and honest judgment in determining whether or not it has in fact occurred."  (Id. at 6 (quoting 42 East, LLC v. D.R. Horton, Inc., 722 S.E.2d 1, 10 (N.C. Ct. App. 2012)).)  Moreover, ACE argues that it exercised good faith here, relying on its views of the merits of NAA's claims in the NAA Lawsuit.  (Id. at 6-7.)  Defendants reply that a third party's belief is "too far removed from the protection of 'good faith and honest judgment'" to be "scrutinized for reasonableness."  (Doc. 22 at 4.)

The court assumes for the purpose of this motion that these agreements are governed by North Carolina law, as the parties have exclusively cited North Carolina cases in their briefing.  "Where

7

a contract confers on one party a discretionary power affecting the rights of the other, this discretion must be exercised in a reasonable manner based upon good faith and fair play." Mezzanotte v. Freeland, 200 S.E.2d 410, 414 (N.C. Ct. App. 1973), cert. denied, 201 S.E.2d 689 (N.C. 1974). A contract reserves the right of termination where a party may terminate upon the occurrence of an express condition, even if the condition is not a material breach. Midulla v. Howard A. Cain Co., Inc., 515 S.E.2d 244, 246 (N.C. Ct. App. 1999); see also 13 Corbin on Contracts, § 68.9 Termination of a Contract — Exercise of a Power Reserved (2023) (describing the right of termination as providing an option to terminate even "in the absence of breach or upon an express condition that may constitute a partial or total breach").

As alleged, ACE's claims for "Money Owed" and "Transfer of Policy to ACE" are, in essence, claims to enforce termination provisions in the Insurance Agreements that provide ACE certain remedies. The Insurance Agreements plausibly constrain ACE's right to terminate upon the occurrence of a "Material Breach." By enumerating what constitutes a "Material Breach," the parties appear to have set out conditions giving rise to ACE's right to terminate. (Doc. 14 ¶ 18); Robbins v. C.W. Myers Trading Post, Inc., 117 S.E.2d 438, 440 (N.C. 1960) ("A contract must be construed as a whole, and the intention of the parties is to be collected from the entire instrument and not from detached

8

portions." (internal quotation marks and citation omitted)); 11 Williston, § 32:11 (4th ed.) ("[G]reater regard is given to the clear intent of the parties than to any particular words they may have used in expressing their intent."). Thus, the list of Material Breaches is plausibly construed, at least at this stage, as a list of conditions giving rise to ACE's right to terminate.[2]

On this record, ACE has plausibly alleged that at least one of those conditions occurred. (Id. ¶ 19.) Even setting aside the cross-reference to the NAA Lawsuit, the complaint in this case alleges that each Defendant has committed certain acts, "including soliciting customers to terminate life insurance policies issued through NAA and to purchase replacement policies through Jason Carey; contacting existing NAA clients in an attempt to bring them onboard the Careys' competing life-insurance sales company; making disparaging statements about NAA and its principals; and, upon information and belief, misuse of confidential information." (Id.) It is plausible that one of these acts, at a minimum, violates the condition that Defendants not "perform[] services for a business which sells life insurance products as a significant part of its business in a manner that would threaten existing or

---

[2] While the complaint itself plausibly gives rise to this construction of the Insurance Agreements, the Split Dollar Agreements filed by ACE support this construction as well. (See Doc. 24-1 ¶ 8 ("Termination During Agent's Lifetime. This Agreement shall terminate during the Agent's lifetime: . . . ."); Doc. 24-3 ¶ 8 (same)); see also Goines, 822 F.3d at 166.

9

prospective customer relationships of NAA or its affiliates." (Id. ¶ 18.) Accordingly, Defendants' motion to dismiss on the ground that the complaint "presuppose[s] that Defendants committed material breaches" will be denied.

Defendants' second argument — that ACE's insurance agreements are unenforceable illusory contracts — fares no better at this stage. Every valid contract must be supported by consideration, and one consideration may support several promises. Wellington-Sears & Co. v. Dize Awning & Tent Co., 147 S.E. 13, 15 (N.C. 1929) ("[I]t is not necessary that each promise have a separate consideration."). Accordingly, "a covenant which imposes obligations upon one party only may be enforceable, if it is part of an entire contract which is supported by a sufficient consideration." Id.

An illusory promise is "[a]n apparent promise which, according to its terms, makes performance optional with the promisor no matter what may happen, or no matter what course of conduct in other respects he may pursue." Bowman v. Hill, 262 S.E.2d 376, 377 (1980) (citing Williston on Contracts § 1A (3d ed. 1957)); see also Wellington-Sears & Co., 147 S.E. at 15 (defining an illusory promise as one where a promisor reserves "an unlimited right to determine the nature or extent of his performance").

North Carolina courts do not enforce illusory promises. See e.g., Milner Airco, Inc. v. Morris, 433 S.E.2d 811, 814 (N.C. Ct.

10

App. 1993) (finding promise illusory where employer promised the employee "the potential to become an account manager" because employer made "no new promise that he was required to keep in return for the promise not to compete"). A party to a contract may still confer "on one party a discretionary power affecting the rights of the other" without rendering the contract illusory. Mezzanotte, 200 S.E.2d at 414 (finding a promise to obtain financing enforceable because of implied promise to "make reasonable efforts" to obtain financing constitutes an implied legal detriment). In such contracts, the "discretion must be exercised in a reasonable manner based upon good faith and fair play." Id.

Moreover, a contract may contain a termination provision that conditions the privilege of termination on the occurrence of an event. "Neither a conditional right to terminate nor the power to cancel can be exercised in the absence of a good faith determination that the condition has or has not been met." 13 Corbin on Contract § 68.9. "A promise conditioned upon an event within the promisor's control is not illusory if the promisor also impliedly promises to make reasonable effort to bring the event about or to use good faith and honest judgment in determining whether or not it has in fact occurred." Mezzanotte, 200 S.E. 2d at 415 (internal quotation marks omitted). These implied promises "may bridle an apparently unlimited right of cancellation or

11

termination, enabling the apparently illusory promise to serve as consideration." 3 Williston on Contracts § 7.14 (4th ed).

In <u>Mezzanotte v. Freeland</u>, 200 S.E.2d 410 (N.C. Ct. App 1973), for example, the plaintiffs agreed to purchase a tract of land from the defendants, contingent on the plaintiffs obtaining a loan from North Carolina National Bank ("NCNB") on "satisfactory" terms. <u>Id.</u> at 413-14. The defendants rejected the plaintiffs' tender after receiving financing elsewhere, arguing that the promise to buy was illusory. <u>Id.</u> at 414. The court enforced the agreement on the ground that plaintiffs had impliedly promised to make "reasonable effort[s]" to secure financing from NCNB, thus offering adequate consideration. <u>Id.</u> at 414-15; <u>see also</u> <u>Fulcher v. Nelson</u>, 159 S.E.2d 519, 521-22 (N.C. 1968) (enforcing promise that allowed purchaser to "trade back" a car he purchased if he was "not happy" with it because of implied promise to exercise good faith).

Here, while Defendants argue that "the contract" is unenforceable, they do not dispute that there is consideration as to the loan arrangement as a whole. To the extent Defendants do, the complaint plausibly alleges that ACE has promised to pay the premiums on Defendants' life insurance policy in consideration of Defendants' promise to pay interest. (Doc. 14 ¶ 9.)

The complaint otherwise plausibly alleges that the termination provisions are enforceable. It is unpersuasive at

12


this stage that ACE, "through its related entity NAA," has unlimited discretion to decide that Defendants' actions constituted a "Material Breach." (Doc. 19 at 8.) Instead, ACE's discretion is constrained by its requirement to use "good faith and honest judgment in determining whether" a Material Breach has occurred. 42 East, LLC, 722 S.E.2d at 10. As alleged, ACE may, for example, terminate the Insurance Agreements if Defendants "perform[] services for a business which sells life insurance products as a significant part of its business in a manner that would threaten existing or prospective customer relationships of NAA or its affiliates." (Doc. 14 ¶ 18.) This condition plausibly implies a promise to use "good faith and honest judgment" to determine if it in fact occurred, 42 East, LLC, 722 S.E.2d at 10, thus "furnish[ing] sufficient consideration to support a return promise," Mezzanotte, 200 S.E.2d at 415. Consequently, Defendants motion to dismiss on the ground that the contract is an unenforceable illusory contract will be denied.

## III. CONCLUSION

For the reasons stated,

IT IS THEREFORE ORDERED that Defendants' motion to dismiss (Doc. 18) is DENIED.

/s/ Thomas D. Schroeder
United States District Judge

February 8, 2024